UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL L.,[1]<br><br>Plaintiff<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:21-cv-02381-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Michael L. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs [Dkt. 18 ("Pltf. Br.") and Dkt. 21 ("Def. Br.")] addressing disputed issues in the case. The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for SSI and DIB alleging disability as of June 26, 2017. [Dkt. 15, Administrative Record ("AR"), 201-203.] Plaintiff's applications were denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Bruce T. Cooper. [AR 1-6, 31-41.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2017, the alleged onset date. [AR 33.] At step two, the ALJ found that Plaintiff suffered from severe impairments including diabetes, seizures, status post craniotomy (benign brain tumors/panhypopitutarism), and obesity. [AR 34.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 35.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of sedentary work, including:

> lifting 10 pounds occasionally and less than 10 pounds frequently, carrying 10 pounds occasionally and less than 10 pounds frequently, sitting for six hours, standing for two hours, and walking for two hours, [claimant] needs a singlepoint cane for prolonged ambulation (greater than 100 yards or more than a block to assist with balance), can push/pull as much as can lift/carry, can climb ramps and stairs occasionally, can never climb ladders, ropes, or scaffolds, can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally, can never work at unprotected heights and never work around moving mechanical parts, and can never operate a motor vehicle.

[AR 35.]

Applying this RFC, the ALJ found at step four that Plaintiff could not perform his past relevant work given the limitations in the RFC findings. [AR 39.]

However, at step five, the ALJ concluded that Plaintiff is able to perform other work that exists in significant numbers in the economy. [AR 39.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This appeal followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

1. Whether the ALJ properly considered the credibility of Plaintiff's testimony; and
2. Whether the final decision of the Commissioner is invalid because it arose from an unconstitutional administrative process.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite

the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### 1. The ALJ Adequately Rejected Plaintiff's Subjective Complaints

In his first issue, Plaintiff argues the ALJ failed to articulate legally sufficient reasons for rejecting his subjective symptom testimony. [Pltf.'s Br. at 3-15.] Specifically, Plaintiff argues that the ALJ erred in determining that his daily activities, which include daily walks for 40 to 50 minutes, driving, and riding his bike for exercise, do not contradict his testimony nor demonstrate that he is capable of full-time work. [Pltf.'s Br. at 9.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pltf.'s Br. at 15-16.] Defendant asserts that the ALJ's decision should be affirmed. [Def. Br. at 15.]

Upon a thorough review of the record, including the ALJ's decision, the Court finds no legal error in the ALJ's assessment of Plaintiff's testimony.

### A. Legal Standard

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). And second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the

4

asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (citation and internal quotations omitted).

Because there is no allegation of malingering and the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ's reasons must be clear and convincing. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). [AR 25]. Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina,* 674 F.3d at 1115.

### B.     Administrative Hearing Testimony

At the administrative hearing on May 6, 2020, Plaintiff testified about his history of a benign brain tumor, seizures, and diabetes. [AR 92-134.] At the start of the hearing, impartial medical expert Steven Goldstein, M.D., testified before the ALJ to his opinion of Plaintiff's impairments. [AR 96.] Upon reviewing the record, Dr. Goldstein testified that in June 2017 Plaintiff underwent surgery for a "craniopharygioma" "above his pituitary gland." [AR 98.] Months after the surgery, Plaintiff had two seizures in November 2017 for which he was prescribed Keppra, a preventative seizure medication. [AR 98.] Following November 2017, Plaintiff has not had any recurrent seizures. [AR 98.] Because Plaintiff is stable on his seizure medication, Dr. Goldstein testified that Plaintiff's most pressing impairment, at the time of the hearing, was his uncontrolled diabetes. [AR 100.] According to Dr. Goldstein, at some points, Plaintiff's blood sugar levels were over 14, a dangerously high level that could require hospitalization. [AR 104.] But at other times, Plaintiff's blood sugar levels were as low as 8. [AR 103.] Dr. Goldstein testified that "if [Plaintiff's] diabetes was under control, he should at least be able to function at a light level of activity." [AR 102.]

Following Dr. Goldstein's testimony, the ALJ questioned Plaintiff about his compliance with his diabetes treatment. [AR 108.] The ALJ inquired as to why Plaintiff experienced periods where his A1C levels varied widely. [AR 107-108.] Plaintiff explained that he was unaware of his diabetes diagnosis until his 2017 brain surgery. Because he was diagnosed while receiving treatment for his brain tumor, Plaintiff testified that doctors failed to fully inform him "how to inject" his insulin. [AR 108.] The ALJ inquired further why at some points Plaintiff's A1C levels were about "8.5 which is much better," but at other times his levels spiked to "13.5, which is pretty high?" [AR 108.] Plaintiff responded, "I don't know why." [AR 109.]

When asked about his diabetes treatment, Plaintiff testified that Dr. Rambod Amani initially served as his primary Endocrinologist. [AR 110.] Plaintiff testified that Dr. Amani placed him on a diet, that Plaintiff follows, although he finds it difficult to comply when he is "out on the road." [AR 111-112.] The ALJ followed up by asking Plaintiff about instances in the record where Plaintiff skipped meals causing him to miss his insulin injections. [AR 112.] Plaintiff responded that his eating schedule is inconsistent because when he has a late breakfast, that causes him to feel full far beyond lunch time. [AR 112.]

Plaintiff testified further that he had disagreements with Dr. Amani about his course of treatment, including the amount of his insulin injection (AR 109) and the form of his prescribed testosterone medication. [AR 115.] Because Plaintiff had "some issues" with Dr. Amani, he now sees a new doctor for telemedicine appointments. [AR 110-111.]

**C. The ALJ's Findings**

In rejecting Plaintiff's subjective symptom limitations, the ALJ opined as follows:

> The claimant's current impairment/allegations are rooted in poorly controlled diabetes, but the uncontrollable diabetes is directly due to the claimant's lack of complete compliance with treatment in handling his

diet and skipping insulin while missing meals. This lack of complete compliance appears in December 2018 up through December 2019. While compliant with treatment, the claimant lowered his hemoglobin A1C and had his diabetes under better control. The claimant's argument that the medications are not effective fails to acknowledge his own significant and substantial lack of complete compliance.

Despite Dr. Amani's recommendation, the claimant did not want to increase the insulin nor add any oral diabetic medicine for better blood sugar control. The claimant's lack of complete compliance with treatment eventually led to arguments with his endocrinologist.

The claimant's overall treatment history is also inconsistent with his allegations and supports the residual functional capacity given above. In January 2019, the claimant stated that he felt well and on examination appeared alert with unremarkable findings. In October 2019, the claimant was overall doing well. He was ambulating without difficulty. He had had no new numbness, tingling, or weakness. His strength was 5/5 in the bilateral upper and lower extremities. His sensation was intact. In April 2020, the claimant's finger sticks showed blood sugars less than 300, which according to the claimant had improved.

In sum, the objective evidence fails to establish that the claimant is unable to perform all work activity as he alleges. In fact, the lack of such evidence to substantiate his claims undercuts his statements regarding his subjective complaints. By limiting the claimant to the residual functional capacity described above, his substantiated impairments are fully accommodated.

The claimant's activities of daily living are not corroborative of his alleged degree of impairment and further support the residual functional capacity given above. In November 2017, the claimant was able to drive himself back and forth to radiotherapy. In April 2018, the claimant walked the dog for 40 to 50 minutes five to seven days per week. In May 2018, the claimant walked and talked to his neighbor. In April 2020, the claimant was riding his bike for exercise. The claimant testified that he did not follow diet recommendations when he was on the road. He also acknowledged that he did not have consistent eating times.

These factors suggest that the claimant's conditions are not as severe as he alleges. Accordingly, his allegations of debilitating symptoms are less than persuasive/merit less weight. Thus, he does not have limitations beyond those stated in the residual functional capacity given above.

[AR 37 (internal citations omitted.)]

**D.     Analysis**

Here, the ALJ gave at least three reasons to reject Plaintiff's credibility: (1) Plaintiff had an unexplained failure to follow his prescribed treatment plan; (2) inconsistencies between Plaintiff's testimony and his daily activities; and (3) inconsistency with the objective medical evidence.

The first reason the ALJ gave for discounting Plaintiff's testimony was his noncompliance with his prescribed treatment plan despite recommendations that his impairments could be effectively treated. This reason was clear and convincing. For example, the ALJ noted that despite recommendations from Endocrinologist, Dr. Amani, Plaintiff did not want to increase his insulin nor add oral diabetic medication. [AR 37.] Specifically, during an October 14, 2019 appointment, Dr. Amani noted that Plaintiff "does not want to increase the insulin nor add any Oral diabetic medicine for better blood sugar control." [AR 1891.] Dr. Amani noted that, in response to recommendations that Plaintiff increase his medication, Plaintiff became "loud in the Office" and he accused Dr. Amani of receiving a "kick back from the Pharmaceutical company" as the reason why Dr. Amani prescribed "more medicine." [AR 1891.] Dr. Amani reported in Plaintiff's treatment notes that Plaintiff "was very upset about the way that Dr. Amani filled [out Plaintiff's] DMV form regarding his blood sugars and uncontrolled diabetes."[2] [AR 1891.] Because

---

[2]     On October 7, 2019, Dr. Amani completed Plaintiff's Department of Motor Vehicles "Driver Medical Evaluation." [AR 1913-1917.] Dr. Amani noted that Plaintiff "has uncontrolled diabetes;" "he doesn't follow diet, [he] sometimes skips insulin because [he misses] meals," and "[Plaintiff] did not have [a] recent diabetic eye exam." [AR 1916 -1917.]

8

of Plaintiff's disruptive outburst, Dr. Amani contacted Plaintiff's primary care physician and requested that Plaintiff be assigned to a different Endocrinologist. Dr. Amani also informed Plaintiff that due Plaintiff's behavior, he could no longer offer services to Plaintiff because Plaintiff "does not want to follow recommendations and [he accuses] Dr. Amani [while] using fowl [sic] language." [AR 1891.] The ALJ also noted that Plaintiff's lack of compliance was evident prior to his incident with Dr. Amani as the record demonstrated noncompliance from December 2018 to December 2019. [AR 37, 963, 988, 1908, 1956.]

Overall, the ALJ found Plaintiff's unwillingness to improve his condition and his repeated failure to comply with his physician's recommendations undermined his credibility which is a valid reason for discounting Plaintiff's self-reported complaints about the severity of his symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may consider "unexplained failure to seek treatment or to follow a prescribed course of treatment"); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff does not address the ALJ's findings related to non-compliance and improvement with treatment, let alone argue those findings are unsupported by substantial evidence. Accordingly, the Court finds that Plaintiff's non-compliance, as detailed by the ALJ, was a particularly compelling reason to afford Plaintiff's subjective statements less weight. This is a clear and convincing reason for finding Plaintiff less than fully credible.

Next, the ALJ also performed a thorough review of the medical evidence and detailed why the objective findings were wholly inconsistent with Plaintiff's alleged limitations. For example, the ALJ noted that there were several instances in the record where Plaintiff reported doing well. [AR 37.] In January 2019, Plaintiff stated that he felt well, and examination findings were unremarkable. [AR 1802.] In October 2019, Plaintiff's Neurologist reported that Plaintiff was ambulating

without difficulty and doing well overall: he had had no new numbness, tingling, or weakness; his strength was 5/5 in all extremities; and his sensation was intact. [AR 37, 1894.] In April 2020, Plaintiff's finger sticks showed blood sugars less than 300, which, according to Plaintiff, was an improvement. [AR 37, 1972.] The ALJ correctly found that this substantial evidence was not in keeping with Plaintiff's allegations of total disability. Although lack of objective evidence supporting a claimant's symptom complaints cannot be the sole basis for discounting them, *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989), the ALJ may consider it as a factor in the subjective complaint analysis, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). *See also Morgan v. Comm'r*, 169 F.3d 595, 599-600 (9th Cir. 1999) (an ALJ properly considered conflict between a claimant's subjective complaints and the medical evidence and found that the latter did not support the former); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (in evaluating subjective complaints, an ALJ can consider evidence that treatment produced "a fair response").

   Finally, the ALJ also discussed Plaintiff's daily activities. [AR 37.] However, the Court need not address whether this additional reason was valid because even assuming that it was not, any error was harmless in light of the other legally sufficient reasons for the ALJ's determination. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

   Accordingly, reversal is not warranted based on the ALJ's consideration of Plaintiff's testimony regarding the nature and severity of his symptoms.

**2. Unconstitutional Administrative Process**

   The second issue raised by Plaintiff is whether the final decision arises from

an unconstitutional administrative process that requires remand for a new hearing. The Ninth Circuit's recent opinion in *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022), decided after the briefs in this case were filed, is dispositive of this issue. In *Kaufmann*, the Ninth Circuit held that the removal provision in the statute governing the President's removal authority over the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), was unconstitutional and severable. *Id.* at 848. In deciding the appropriate remedy for the plaintiff, whose appeal to the Appeals Council was denied while former Commissioner Saul was serving under the unconstitutional removal statute, the court stated that "[a] party challenging an agency's past actions must [] show how the unconstitutional removal provision actually harmed the party[.]" *Id.* at 849. Here, as in *Kaufmann*, Plaintiff has not presented any evidence or articulated a plausible theory to show that the removal provision caused him any actual harm. *See id*. at 849-50; *Rhene N. v. Kijakazi*, No. EDCV 21-00160 KS, 2022 U.S. Dist. LEXIS 134740 (C.D. Cal. July 28, 2022). Absent a showing of actual harm, the Court will not reverse the SSA's decision. *See Kaufmann*, 32 F.4th at 849 ("[U]nless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case."). Thus, reversal on this ground is not warranted.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: August 24, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE